JAMES JACKSON, ON THE DEMISE OF HARMAN V. HART, PLAINTIFF IN ERROR *vs.* ELIAS LAMPHIRE, DEFENDANT IN ERROR.

This court has no authority, on a writ of error from a state court, to declare a state law void on account of its collision with a state constitution ; it not being a case embraced in the judiciary act, which gives the power of a writ of error to the highest judicial tribunal of the state. [288]

The plaintiff in error claimed to recover the land in controversy, having derived his title under a patent granted by the state of New York to John Cornelius. He insisted that the patent created a contract between the state and the patentee, his heirs and assigns, that they should enjoy the land free from any legislative regulations to be made in violation of the constitution of the state, and that an act passed by the legislature of New York, subsequent to the patent, did violate that contract. Under that act commissioners were appointed to investigate the contending titles to all the lands held under such patents as that granted to John Cornelius, and by their proceedings, without the aid of a jury, the title of the defendants in error was established against, and defeating the title under a deed made by John Cornelius, the patentee, and which deed was executed under the patent.

This is not a case within the clause of the constitution of the United States, which prohibits a state from passing laws which shall impair the obligation of contracts. The only contract made by the state is a grant to John Cornelius, his heirs and assigns of the land. The patent contains no covenant to do or not to do any further act in relation to the land; and the court are not inclined to create a contract by implication. The act of the legislature of New York does not attempt to take the land from the patentee, the grant remains in full effect ; and the proceedings of the commissioners under the law, operated upon titles derived under, and not adversely to the patent. [289]

It is within the undoubted powers of state legislatures, to pass recording acts by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within a limited time; and the power is the same whether the deed is dated before or after the recording act. Though the effect of such a deed is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law violating the obligation of contracts. So too is the power to pass limitation laws. Reasons of sound policy have led to the general adoption of laws of this description, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur, where the provisions of a law on these subjects may be so unreasonable as to amount to a denial of a right, and to call for the interposition of this court. [290]

THIS was a writ of error to the court for the trial of impeachments and correction of errors for the state of New York.

An action of ejectment was commenced in the supreme court of New York, to May term 1825, for a tract of land, part of lot number thirty-six, in Dryden, Tompkins county, part of the military tract, and formerly part of Onondaga county. The cause was tried in June 1826, and a verdict and judgment were rendered for the defendant. On the trial of the cause, a bill of exceptions was tendered by the plaintiff, and a writ of error was prosecuted by him to the supreme court of errors of the state of New York, where the judgment of the court below was affirmed; and the plaintiff brought up the case to this court by writ of error. The title of the plaintiff, as stated in the bill of exceptions, was derived under letters patent, for the whole lot number thirty-six, issued to John Cornelius, and his heirs and assigns, under the great seal of the state of New York, dated the 17th of July 1790; and a conveyance in fee of the lot from the patentee to Henry Hart, dated the 17th of January 1784, duly proved and deposited for record, according to the provisions of a statute of the state, on the 25th of April 1795. Evidence was also given to prove that Henry Hart died some time in the summer of 1788, leaving the lessor of the plaintiff his heir at law, he being then a minor, aged about five years. That about the year 1791, he was taken to Canada by his paternal uncle, and afterwards entered into the employ of the North West Company, and continued in the same for upwards of sixteen years, and then returned to New York; and has since resided in Albany in that state.

The title of the defendant was derived from the same patent to John Cornelius, and under a deed executed by him, dated June 23, 1784, duly proved October 31, 1791, and deposited, according to the statute, April 3, 1795. By this deed, the premises in dispute were conveyed to Samuel Brown. On the 25th of January 1793, Brown conveyed to William J. Vredenburgh and John Patterson; on the 9th of June 1800, Vredenburgh, for himself and as attorney for Patterson, regularly constituted, conveyed to Gerret H. Van Wagoner; who on the 9th of June 1800, conveyed to William J. Vredenburgh; and by a deed duly executed by Vredenburgh, July 5, 1800, duly acknowledged and recorded,

the premises were vested in Elias Lamphire, the defendant in error.

On the 24th of March 1797, the legislature of New York passed " an act to settle disputes concerning the titles to lands in the county of Onondaga."

The preamble of that law recites :

Whereas a convention of delegates from a number of towns in the county of Onondaga have, by their petition presented to the legislature, prayed that a law may be passed, authorising a speedy and equitable mode of settling disputes relative to the titles of land in that county : therefore, be it enacted, &c.

The first section appoints commissioners, with full power to hear, examine, award and determine, according to law and equity, all disputes and controversies respecting the titles, and all claims whatsoever to any lands in the county of Onondaga, and to examine any party or parties submitting to their examination and witnesses on oath, and to commit any witness refusing to be sworn or to answer any question or questions touching the premises, to the gaol of the county in which they may then sit, there to remain until he or she shall submit to be sworn, and to answer such question or questions : provided always, that no person shall be obliged to answer any question which may tend to charge himself or herself with any crime, nor shall any witness be compelled to answer any question or questions wherein he or she shall be interested.

The second section directs that the commissioners shall proceed to execute their trusts, and shall meet for the purpose at times most convenient, in the county of Onondaga, and shall cause their award or determination upon every claim or controversy respecting any lands in the said county of Onondaga, to be entered in a book or books to be by them provided for that purpose ; which award or determination shall, after the expiration of two years after the making thereof, become binding and conclusive to all persons, except such as, conceiving themselves aggrieved by any such award or determination, shall within the said two years dissent from the same, and give notice thereof to the said commissioners,

[Jackson *vs.* Lamphire.]

or file the same in the office of the clerk of the county of Onondaga; and shall also, if not in the actual possession of such land, within three years after such award or determination commence a suit or suits, either at law or in equity, to recover the land or to establish his or her right to the same, and shall prosecute such suit or suits to effect; in which case, such award or determination shall not operate as a bar. to such suit or suits, but if no such suit or suits are brought within the times aforesaid and prosecuted to effect, then the said award or determination of the commissioners shall be final and conclusive ; and in case any such suit commenced within the time aforesaid shall abate by the death of the defendant, then the party dissenting, or if by his death, then his heirs or devisees, may at any time within one year revive such suit, or if necessary commence a new suit for the purpose aforesaid, and prosecute the same with like effect as such first suit might have been prosecuted, if it had not abated as aforesaid ; and the said commissioners are hereby directed to enter in the said book or books a note of the time of receiving every such dissent; and when they shall have executed the trusts and duties by this act committed to them, they shall deposit the said book or books in the office of the clerk of the said county of Onondaga, there to remain as records of their proceedings : provided always, that if the parties in any case will enter into an agreement before the said commissioners, to abide by their determination, then and in every such case the award or determination of the said commissioners shall be final and conclusive as to such parties and their heirs for ever.

The third section directs notice of their appointment and of the time and place of their meeting to be given by the commissioners, and that the notice shall require all persons having any dispute or controversy respecting any title or claim to any land in the said county of Onondaga, to appear in person, or by their agents or attorneys, before the said commissioners, at the time and place therein mentioned, to exhibit their claims, that the said commissioners may proceed in the execution of the trusts committed to them.

By the sixth section it is declared, that as to all lands in the county to which no adverse claim shall be made, an entry to that effect shall be made in the books of the commissioners, but in cases of interfering claims they shall examine and determine the same; and in all cases where there are filed or recorded in the said office two or more deeds from one and the same person, or in the same right to different persons, if any person interested under either of them shall neglect to make his claim, and in all cases where several persons appear to have claims to one and the same piece of land, and any of them do not appear before the said commissioners, they shall cause a notice to be published in the newspapers aforesaid, and continued for six weeks, requiring all persons interested in such land to appear at a certain time and place therein mentioned, not less than six months from the date of such notice, and exhibit their claims to the same land; and after the expiration of the time therein mentioned, it shall be lawful for the said commissioners to proceed to the examination and determination of all matters concerning the said land, and the title to the same, whether all or any of the parties interested therein appear and exhibit their claims or not; saving to all persons aggrieved by any such award or determination the right of dissenting and prosecuting in the manner aforesaid.

The seventh provides, that if the party dissenting from the award of the commissioners shall be in the actual possession of the premises, then the award of the commissioners shall be as to such person of no effect; and unless the party in whose favour the award of the commissioners shall be made, shall within three years commence a suit to establish his title to the land, and shall prosecute the same to effect, then he shall be for ever barred of all right or claim to the land.

The eighth section declares, that neither the act nor any thing therein contained shall be construed to the prejudice of any person under the age of twenty-one years, or feme covert, or person not of sound mind, or in prison; if such infant, feme covert, person not sound of mind, or prisoner, shall within three years after coming to the age of twenty-

one years, becoming discovert, of sound mind, and at liberty, make their dissent, and bring their suit and prosecute the same to effect.

The twelfth section prohibits the exercise of any powers under the act after the 1st day of June 1800.

On the 17th of December 1799, two of the commissioners made an award in the following terms.

" Having heard the proofs and allegations, and examined the title of such of the parties interested in lot number thirty-six, in the township of Dryden, in the county of Cayuga, as have appeared and exhibited claims to the said lot, and having also inspected the records and files remaining in the office of the clerk of the county aforesaid, relative thereto, and due deliberation being had thereon, we, the commissioners, appointed by and in pursuance of the act entitled " an act to settle disputes concerning titles of lands in the county of Onondaga," do, in pursuance of the authority given us in and by the said act, award and determine, that William J. Vredenburgh and John Patterson are entitled to, and stand seised in their demesne of an absolute estate of inheritance; in and to the same lot, subject to the reservations, provisions, and conditions contained in the original grant."

Mr Storrs, for the plaintiff in error, contended : that the judgment of the supreme court of error for the state of New York was erroneous, and should be reversed, for these reasons.

1. The letters patent, granting the lot to John Cornelius, created a contract with the grantee, his heirs and assigns, that they should enjoy the same free from any legislative regulations, to be made in violation of the constitution of the state.

2. The act of the legislature of the state of New York violated the constitution of the state and the United States; and the determination or award of the commissioners under it was a nullity.

3. It violated that provision of the constitution of the state which ordains, that " the legislature of this state shall, at no

time hereafter, institute any new court or courts, but such as shall proceed according to the course of the common law."

4. It violated that article of the state constitution which ordained, that " trial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established, and remain inviolate for ever."

5. It was, therefore, as well for these violations of the state constitution as on general principles, a statute which impaired the obligation of contracts.

6. The Onondaga commission was a court, within the meaning of the constitution of the state, which did not proceed according to the course of the common law.

7. It was without precedent ; and was an arbitrary, ex parte, and summary tribunal, proceeding in violation of all the securities of property, which the citizens of that state had confided by their constitution to the protection of their common law courts.

Mr Hoffman, for the defendant in error, made the following points :

1. On a writ of error, to the court of last resort, in a state ; under the circumstances of this case ; the only error which can be alleged or regarded is, that the act of the legislature, in pursuance of which the award was made, is repugnant to the constitution of the United States.

2. The act of the legislature of New York, entitled "an act to settle disputes concerning the title to lands in the county of Onondaga," passed the 24th of March 1797, is not repugnant to the constitution of the United States, nor is the award under it.

3. The plaintiff in error contends that, the patent of the state of New York implies a contract on the part of the state with the grantee, his heirs and assigns, for ever ; *that the legislature of the state should not pass any law affecting the estate, contrary to the state constitution :* that the law constituted a *court* which did not proceed by jury, according to the course of the common law, and thus the act impairs the obligation of an implied contract, and violates the constitution of the United States :

[Jackson *vs.* Lamphire.]

For the defendant it is denied, that any such contract can be inferred or implied from the grant, nor any other than such as could have been fairly implied from it, if it had been made by the late colony of New York, or by any citizen of the state, or of lands lying without the state ; and the law will not imply a covenant not to do an act which the state constitution had made impossible.

The act of March 24, 1797 is not contrary to the constitution of the state; but has been uniformly declared by the courts of the state, and lately by its highest court of judicature, to be constitutional ; and their decision is final on this question.

5. The Onondaga commissioners were not a court ; and could not make any judicial sentence respecting these lands: by the proviso to the third section of the act, where the parties would agree before them to abide by their determination, this award is declared to be final : in all other cases they acted as commissioners to ascertain and report the state of the title to these lands.

6. Their award, as such, had no effect or force to divest or impair the estate : and if a party is concluded by it, it is because he has consented and agreed thereto, by his neglect to file his dissent, and bring his suit within the period prescribed by law.

The act is a beneficial statute of limitations, which did not begin to run until after the award was made, and does not impair the obligations of any contract.

Mr Justice Baldwin delivered the opinion of the Court.

Both parties claim the premises in question, under John Cornelius, to whom the state of New York granted them by patent, dated the 7th of July 1790, in consideration of his military services in the revolutionary war.

Six years before the date of the patent, and while the title of Cornelius was imperfect, he conveyed the premises to Henry Hart, the father of the plaintiff's lessor, by deed dated January the 17th, 1784, proved and deposited in the office of the clerk of the county of Albany, according to law, on the 25th of April 1795.

Henry Hart died in 1788, leaving the plaintiff, his only child, and heir at law, who was born the 21st of September 1784, removed to Canada in 1791, and remained there till 1807 or 1808, when he returned to Albany, where he resided till the commencement of this suit of May term 1825 : he claims as heir at law to his father.

On the 23d of June 1784, John Cornelius conveyed the same premises to Samuel Broom by deed, duly proved and deposited as aforesaid on the 3d of April 1795. The title of Broom, by sundry mesne conveyances, became vested in William J. Vredenburgh, who conveyed to the defendant. The premises were vacant till 1808, when possession was taken under Vredenburgh, who then held the title of Broom.

The defendant did not question the original validity of the deed to Henry Hart, but rested his defence on an act of assembly of the state of New York, passed the 24th of March 1797, to settle disputes concerning titles to lands in the county of Onondaga, the provisions of which are set forth in the case.

The defendant offered in evidence an award made by two of the commissioners appointed by this act, awarding the land in controversy to William J. Vredenburgh and John Patterson (to whom Broom had conveyed) ; the award was dated December 17th, 1799, and no dissent was entered by the plaintiff. The court admitted the award to be read in evidence ; and gave in charge to the jury, that it was competent and conclusive to defeat the title of the plaintiff. Judgment was rendered for the defendant in the supreme court, and affirmed in the court of errors; and the case comes before us by writ of error, under the twenty-fifth section of the judiciary act.

The plaintiff contends, that the act of the 24th of March 1797, and all proceedings under it, are void; being a violation both of that part of the constitution of the United States which declares, that no state shall pass any law impairing the obligation of contracts, and of the constitution of the state of New York, which declares that the legislature shall at no time institute any new court but such as shall proceed according to the course of the common law ; and that trial by

[Jackson vs. Lamphire.]

jury in all cases in which it hath heretofore been used, shall be established, and remain inviolate for ever.

This court has no authority, on a writ of error from a state court, to declare a state law void on account of its collision with a state constitution; it not being a case embraced in the judiciary act, which alone gives power to issue a writ of error in this case; and will therefore refrain from expressing any opinion on the points made by the plaintiff's counsel, in relation to the constitution of New York.

The plaintiff insists, that the patent to John Cornelius creates a contract with the grantee, his heirs and assigns, that they should enjoy the land therein granted, free from any legislative regulations to be made in violation of the constitution of the state; that the act in question does violate some of its provisions; and therefore impairs the obligation of a contract.

The court are not inclined to adopt this reasoning, or to consider this as a case coming fairly within the clause of the constitution of the United States relied on by the plaintiff. The only contract made by the state is a grant to John Cornelius, his heirs and assigns, of the land in question: the patent contains no covenant to do or not to do any further act in relation to the land; and we do not, in this case, feel at liberty to create one by implication. The state has not by this act impaired the force of the grant; it does not profess or attempt to take the land from the assigns of Cornelius, and give it to one not claiming under him; neither does the award produce that effect: the grant remains in full force, the property conveyed is held by his grantee, and the state asserts no claims to it. The question between the parties is, which of the deeds from Cornelius carries the title. Presuming that the laws of New York authorized a soldier to convey his bounty land before receiving a patent, and that at the date of the deeds there was no law compelling the grantees to record them, they would take priority from their date. This is the legal result of the deeds, but there is no contract on the part of the state, that the priority of title shall depend solely on the principles of the common law, or that the state shall pass no law imposing on a grantee the

performance of acts which were not necessary to the legal operation of his deed at the time it was delivered. It is within the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts; such too is the power to pass acts of limitations, and their effect. Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the court; but the present is not one.

The state of New York, in 1794, had felt the necessity of legislating on these military lands. The preamble to the recording act of January 1794, shows very strongly the policy of compelling the deeds for these lands to be recorded; and the known condition of that part of the state, covered by military grants, presented equally cogent reasons, in our opinion, for the passage of the act in question.

As this court is confined to the consideration of only one question growing out of this law, we do not think it necessary to examine its provisions in detail: it is sufficient to say, that we can see nothing in them inconsistent with the constitution of the United States, or the principles of sound legislation. Whether it is considered as an act of limitations, or one in the nature of a recording act, or as a law sui generis, called for by the peculiar situation of that part of the state on which it operates; we are unanimously of opinion, that it is not a law which impairs the obligation

[Jackson *vs*. Lamphire.]

of a contract; and that in receiving the award in evidence, and declaring it to be competent and conclusive on the right of the plaintiff, there was no error in the judgment of the court below. The judgment is therefore affirmed.

This cause came on to be heard on the transcript of the record from the court for the trial of impeachments and correction of errors for the state of New York, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said court for the trial of impeachments and correction of errors for the state of New York in this cause, be, and the same is hereby affirmed with costs.