J. L. STORY, ADM'R, V. W. RUNKLE AND OTHERS.

1—A writ of error could not lawfully issue in October, 1866, to a judgment rendered in 1860. The ordinance of the Convention of 1866, respecting the statutes of limitation, did not authorize the issuance of writs of error when more than two years had elapsed since the rendition of judgment.

2—There is a material difference between ordinary statutes of limitation and the restriction of two years imposed upon writs of error. This restriction is a matter controlling the question whether any jurisdiction of the cause has been acquired by this court, and need not be specially pleaded.

NOTE BY THE REPORTER.—The opinion is almost entirely devoted to proving that the ordinance of 1866 can not operate to restore or allow a right of action, if the time has already elapsed in which the suit was barred ; but inasmuch as this general question does not seem to be necessarily involved in the case, and inasmuch as the present court, organized under the constitution of 1869, has come to a contrary conclusion (in the case of Bender v. Crawford) on the similar ordinance of the latter year, it is deemed best to omit from these head notes the general positions assumed in the opinion.

APPEAL from Caldwell. Tried below before the Hon. A. W. Terrell.

Nothing but questions of pure law being adjudicated in this case, the particular facts attending the litigation below need not be stated.

*Hancock & West*, for the plaintiff in error.

*Chandler & Turner*, for the defendant in error. —We submit that this judgment, having been rendered more than two years before the passage of this ordinance, became a final judgment, conclusive and forever binding between the parties thereto and their privies ; and all the benefits to be

derived therefrom were vested in defendants in error long before the passage of the ordinance, and were therefore vested rights secured to defendant in error, and which can not be taken from him, nor placed in jeopardy for the benefit of a private citizen.

The bill of rights provides (§ 14) that no retroactive law, or any law impairing the obligation of contracts, shall be made. A judgment is a contract. (See Blackstone, 2d vol., 3d book, marginal p. 158.)

The bill of rights adopted by the same convention also provides (§ 20) that no power of suspending the laws in this State shall be exercised except by the Legislature or its authority. In other words, the convention, if it had the power to do this thing, relinquished that power to another body, and could not themselves thereafter exercise it.

It is not, however, believed that the ordinance in question can be extended in its operation beyond the literal import of the words used, especially when the effect would be to take away a vested right, as contradistinguished from the effect of barring a remedy.

Statutes of limitations, *as such*, have existed since the days of Henry VIII, (see 2d Bouvier's Law Dictionary, p. 58,) enacted as *such*, referred to as such, styled as such, and titled as such. Our State has them, and always has had them. (See Oldham & White, p. 299.) These laws are entitled "limitations of civil suits." The phraseology of the ordinance in question is "in all civil actions" the time, etc., shall not be computed in the application of any statute of limitations; thereby clearly referring to that part of our laws known as *statutes* of limitations, and the application must be to the laws of this State known by that name, and especially when the effect might be, not to bar a remedy, but to take away a vested right.

It may be insisted that the organic law-making power is omnipotent, and can compel a surrender of private and vested rights. We reply, this may perhaps be done where the public

good demands the sacrifice; then the right of eminent domain may be and is exercised; but never for the benefit of one citizen to the injury of another.

We conclude this judgment is a contract, and the rights of the parties were vested under it, finally settled, operative and binding. The bill of rights pretects it. And to extend the operation of the ordinance to cases of this kind, would do violence to its phraseology not only, but would defeat the very spirit of all statutes of limitations, which are statutes of repose. It would unsettle rights *secured* by law, instead of granting repose, when time is supposed to have destroyed the evidence of right.

That after the time, viz: two years from the rendition of the judgment, and no writ of error sued out, there was no suit pending; the judgment was final; nothing was pending, and the passage of no law could bring to life and put in issue matters already settled. There was nothing pending, and we know of no power that could unlock the rights of parties, and compel them to subject again their interests to jeopardy.

If it be said that this ordinance and the bill of rights must be construed together, and that legislation upon a specific matter must prevail over a general one, then we say that the constitution of the United States expressly inhibits the States from passing any law retroactive, or affecting the obligation of contracts, and the ordinance is therefore void. (Taylor v. Harrison, 2 Div. N. C., 374; Davis v. Minor, 1 How., [Miss.] 183; Biscoe v. Planters' Bank, 3 Smeds & Marshall, 423; Stipp v. Brown, 2 Carter, [Ind.] 647; McKay v. Springer, 8 Blackford, [Ind.] 506; Ogden v. Blackledge, 2 Cranch, 272; Call v. Huger, 8 Mass., 429; Golden v. Prince, 3 Washington C. C. R., 319; Cordova v. Galveston, 4 Texas, 477–8; Merrill v. Kinburne, 1 N. H., 199; Sneed v. State, 25 Tex. Supplement, 66.)

LINDSAY, J.—This judgment was rendered on the 29th day of October, 1860. The waiver of the issuance or service of the writ of error, was made by the attorneys of the defendant,

accepted in writing and filed in the manner required by the statute, on the 18th day of October, 1866.

A motion is made in this court to dismiss the case, because the writ was not sued out within two years from the rendition of the judgment.  It is, however, insisted in opposition to the motion that, by the ordinance of the 2d day of April, 1866, passed by the Convention holden in that year, it is declared, " the time between the 2d day of March, 1861, and the 2d day of September, 1866, shall not be computed in the application of any statute of limitations;" and so, it is inferred, that this cause is saved from the operation of either of the statutes, Art. 1496, District Court, or Art. 4616, Limitation Act, Paschal's Digest, restricting the efficacy of the writ to a period of two years from the rendition of the judgment.  Whatever may be thought of the validity of that ordinance, and of its binding efficacy upon the people of the State, even upon the hypothesis of its absolute validity, which this court is not now called upon, nor is it necessary, to undertake to determine and settle, it does not, nor can not relieve this cause from the operation of the statutes above referred to.

Admitting the ordinance to be legitimate and valid for some purposes, in the consideration of this motion it must be construed with reference to the fundamental principles of government, both State and National; and if it be invoked in any case where, in its application, it would necessarily destroy rights already acquired, or revive rights already lost, at the time of its adoption, it can not be used as a sword or a shield in the administration of justice.  It is not questioned that the political power may alter, change, modify or abolish any civil remedy which may exist at the time of its action, provided it does not intrench upon rights inalienably vested.  It may enlarge or contract the scope of any statute of limitations.  It may abolish such statutes altogether, and allow parties to enforce their claims according to the principles of natural justice, in the civil tribunals of the State.  But after the time has already fully elapsed within which the absolute right to avail

XXXII—25.

themselves of the bar of the statute is not conceded, but after its lapse is completely vested, even in the cases where the statute must be pleaded to be available, neither Conventions nor Legislatures can, without positive usurpation and tyranny, deny to a citizen the exercise of such right. In consonance with republican governments, which renounce all tyranny and arbitrary action, when a right is once vested in a citizen by the political power, it can not be divested, unless by forfeiture for some offense, some violation of civil duty. Our institutions are republican in character; and the National Government, in the fulfillment of its duties, is bound to guarantee to every State a republican form of government; and its duty ceases not with the guarantee of the mere *form*, but must extend also to its positive action. The guarantee of the mere *form* is but solemn mockery, if the State is to be permitted to run riot in its practical working upon the citizen, who owes his first allegiance to the National Government, and has reciprocally a right to its protection against the tyranny of the local municipal government. This protection is extended by the courts, in interpreting all laws in the true spirit and genius of our institutions, and not blindly regarding every enactment as a fiat of justice, simply because it is enacted into a form of law.

Certain limitations of power in conventions, under the theory of American institutions, are clearly implied in their creation by the people, in whom the positive sovereignty resides. The equality of men, in a political sense, is the soul of our system. Each individual in the delegation of authority to an assembly of men to construct the fundamental law for the whole social body, is presumed only to impart his will for the purpose of modifying, regulating and controlling his natural rights and civil conduct *in the future*, and of keeping them in subordination to the general good of the whole. It cannot be presumed that the power of the delegate is bestowed for any other purpose by any member of the society. For it would be preposterous to suppose that an arbitrary and unlimited power is

conferred upon the delegate by his constituent, or principal, to divest that constituent, or principal, of a right already absolutely acquired, or even of the fruits of a privilege which had already been converted into an indefeasible right of enjoyment.

Conventions are the aggregated wills of the individual members of society, combined to form, or to alter, or amend, the organic law of that society for the future government of its constituent elements. According to the theory of republican governments, their powers are necessarily limited to specific objects, embracing alone the future action of the governments formed or altered by them, and which powers must be exercised by them in consonance with the spirit and genius of the people, for whose use such organisms are intended. Like the legislatures created by them, they must act in subordination to the great republican conception of our institutions, as well as to the national constitution, which interdicts all power to *the State*, whether in its conventional or its legislative action, to impair contracts.

In legal contemplation, a final judgment is a contract. It is an obligation, a perfect obligation, to pay money, or to do, or to omit some certain act. This judgment being a final judgment, and final at the time the ordinance was passed, and for nearly five years before its passage, most obviously any attempt by any authority of the State, conventional or legislative, to change the statute of limitations so as to let in a defense which might totally defeat the vested right, is repugnant to the constitution of the United States, and *pro tanto,* at least, is void.

But this statute upon the limitation of writs of error is not a mere privilege, as the other statutes of limitation to actions enacted by the Legislature, which must be pleaded to become available. It is a positive right conferred by law, which this court is bound to notice and act upon without plea. Whence comes the jurisdiction of this court, if the two years prescribed by the statute have already elapsed at the time of the obtention of the writ of error? In considering the case, this

court must look to the time of the issuance of the writ, and to the service, or waiver and acceptance, in writing, before taking cognizance of the merits of the cause. If these are not in compliance with the law, the case is dismissed, as a matter of course.

This is one of those cases in the same category of those of which the Supreme Court of the United States in Jackson v. Lampshire, 3 Pet., 280, says the provisions of the law are so unreasonable as to amount to the denial of right, and to call for the interposition of the courts, which have full power to judge of the time and manner of their operation, and of the exceptions to the statute. It is also distinctly affirmed in the same and other cases in that court, as well as in a number of the courts of our sister States, with which it is needless to encumber this opinion, that "if the Legislature of a State should pass an act by which a *past* right of action shall be barred, and without any allowance of time for the institution of a suit *in future*, it would be difficult to reconcile such an act with the express constitutional provisions in favor of the rights of private property." *A fortiori*, it would be difficult to reconcile the passage of such an act, *reviving* rights already barred, with these constitutional provisions. We regard the exercise of such a power as utterly subversive of civil liberty, as guaranteed under republican institutions, and, therefore, can not recognize the soundness or the just policy of such a provision in a law of limitations. The case is, therefore, dismissed.

Dismissed.