EDMONSON vs. FERGUSON.

The act of 1847 by which suits and process against volunteers who are absent from the State are suspended until the regiment returned, is constitutional,

ERROR to St. Louis Court of Common Pleas.

McBRIDE, J., *delivered the opinion of the Court.*

Ferguson instituted his action of trespass on the case on promises, against Edmonson, in the Court of Common Pleas of St. Louis county. At the term at which judgment was rendered, the attorney for Edmonson filed his motion for a continuance of the cause, for the reason that the defendant was, at that time a member of a volunteer company of this State, and absent in Mexico in the military service of the United States. The plaintiff admitted the facts stated in the motion, but objected to continuance for such cause, whereupon the court overruled the motion and entered judgment against the defendant, to which exception was taken, and the case has been brought here by writ of error, and a reversal of the judgment sought upon the ground that the court had no authority under the act of 13th February, 1847, to enter judgment against the defendant.

The act above referred to is found in the session acts of the General Assembly of this State of 1846-7, page 109, and provides: "That all process of any kind whatever, commenced or issued against the person or property of any volunteer of this State, engaged as such in any regiment or company of Missouri volunteers, and absent from the State on such service, be and the same is hereby suspended, until such regiment or company to which such volunteer belongs shall return home. That

all suits in any court of this State, to which any volunteer, as aforesaid, may be a party defendant, shall stand continued until the return home of the regiment or company to which said volunteer belongs."

The court below held the foregoing act to be void and inoperative, because it is repugnant to that clause in the constitution of the United States, which inhibits the States from passing any law impairing the obligation of contracts.

If the act in question, be a violation of the constitution, it is the duty of the courts, however disagreeable that duty may be, to declare it so. They are sworn to support the constitution, and should they give force and effect to a legislative act contravening its provisions, they would be recreant to their duty and justly forfeit the respect and confidence of the people and bring distrust and reproach upon their office.

Is the act of the General Assembly of this State above referred to, violative of the constitution of the United States? An exposition of that clause of the constitution, supposed to be infringed, has called forth much learning and astuteness, whilst but little light has been reflected whereby to aid the courts in arriving at the true meaning and intention of the prohibition. The reason of this is, that the question has been too often mingled with the political party conflicts of the country, when the effort has been rather to establish certain dogmas than the ascertainment of truth.

We do not propose to enter at large into or labor this subject; but to our mind there is an obvious and long recognized distinction between the obligation of a contract and the remedy given by law for the time being, to enforce it. The one springs from the acts of the contracting parties, whilst the other is the creature of the legislative will. The remedy exists to enforce contracts, in most cases, prior to the contract, and contracts may be made in the absence of any remedy being prescribed by law. The obligation of a contract receives its inception at its execution; the remedy when the breach occurs. The right derived from the contract is transitory and accompanies the person every where; but the remedy is according to the law of the forum to which application is made, and must be in conformity to the rules prescribed by the laws of that country. See the following authorities: Viners, Ab. title, contract and agreement, letter A, vol. 5, p. 504; 1 Bibb, 567; 2 ib., 202-8; 4 ib., 62-5; 3 Cranch, 319; 4 Wheaton, 200-3; N. Y. Term Rep., 402; 1 John. cases, 140; 2 Mass. R., 88; 2 John. R., 198; 3 Dallas, 370-3, and cases there cited.

It is true that the law in force at the time the contract is made,

enters into and forms a part of the contract, so far as its construction is concerned, and a party once acquiring rights under an existing contract, cannot be divested thereof by a change of the law. A single illustration will explain our meaning. Under the statute of this State it is declared that the use of the words "grant, bargain and sell," in a deed purporting to convey real estate, shall vest certain rights in the grantee. If a deed be made under this law, containing the above terms, whereby certain rights become vested in the grantee, a repeal or change of the law cannot affect his rights, for his contract must be construed with reference to the law in force at the time it was made.

If the General Assembly were to pass an act declaring that a contract to pay $1,000, should be discharged by the payment of $500; or that a contract to pay $500, might be discharged by the delivery of one hundred pounds of tobacco; or that a contract for the payment of any stipulated sum of money, within one year from the date of the contract, should not be due and payable for five years, it would be readily seen that the obligation of the contract was impaired—the contract would be lessened in value. Any change of the terms of a contract, as made between parties, in amount, time, or manner of payment, may be said to impair it, and it is in this sense we understand the restriction in the constitution.

Whilst the legislature may not impair the obligation of contracts, as above stated, it may change the remedy given by law for their enforcement, at its will and pleasure; expediting or retarding their enforcement as may best comport with the public welfare. It appears to us that the power *must* be vested somewhere to shield against the mutation of human affairs, and that the legislative department is the safest depository. That department is directly responsible to the potential voice of those upon whose interest the law is to operate. If they mistake the exigencies of the country, an easy, direct and expeditious corrective is to be found through the ballot-box. If the act in question be found unconstitutional, then are all our remedial laws. But if the General Assembly have the power from time to time to regulate the process, the courts, and the proceedings of the courts, by which a party seeking the enforcement of his contract must be delayed at least six months, and may have his rights postponed for one or two years, then no valid reason is perceived why this act should be made an exception. The legislature have always claimed and exercised the foregoing powers, and no question has arisen as to its legal exercise. It is now the law of this State, that the first term of the court, after the service of process, shall be the return term,

and if the defendant appears and pleads to the action, the cause shall stand continued until the next term. If at the next term the defendant has a witness absent whose evidence is material to him, and he has used due diligence to obtain his testimony, the court may again continue the cause. And even after judgment, where the plaintiff sues out execution immediately, he cannot obtain satisfaction of his execution until the next term of the court. Who has questioned the constitutionality of these enactments?

Parties, where contracts have not been fulfilled according to their terms, and who are therefore compelled to resort to the judicial tribunals for their enforcement, must take the remedy given by law at the time, without regard to the remedy in force at the date of the contract. The courts could not, if they would, proceed under an act which had been repealed by competent authority, for when repealed, it is as regards their proceedings, as though it had never had being.

If the law of the remedy formed the obligation of the contract, and could not be changed by the legislature, we should find the courts in their proceedings, governed by as many different rules as the law had undergone changes. Such a state of things would not be desirable and could never have entered into the contemplation of the framers of the constitution.

For the foregoing reasons the judgment of the Court of Common Pleas ought to be reversed, and the other Judges concurring, the judgment is reversed, and the cause remanded to that Court to be proceeded in conformably to to this opinion.