WHITE *vs.* SCOTT.

In an action of trespass *quare clausum fregit* for damages done by the defendant's sheep, a by-law of a town authorizing cattle and sheep to run at large upon the highways and common lands of the town, even if such a by-law was a sufficient authority for the defendant to allow his sheep to run at large on the highways, furnishes no excuse for suffering them to break through the plaintiff's fence and depasture his meadow. And in an action for such an injury, and for that alone, the giving of the by-law in evidence, unaccompanied by other proof, will not constitute a defence.

If the defendant's sheep were running at large under such by-law, and the plaintiff's fence was insufficient, and through such insufficiency the sheep entered, and did the damage, the defendant should prove the fact of the insufficiency of the fence; and that fact being established, in connection with the by-law, the question as to the validity of the by-law would be fairly presented.

The constitutionality of the act granting to the electors of the several towns power, at their annual town meetings, to make rules and regulations for determining the times and manner in which cattle, horses or sheep shall be permitted to go at large on highways; and of by-laws made in pursuance of that act, considered and discussed, by McCoun, J.

ON writ of error to the common pleas of Suffolk county, to review a judgment of that court reversing a judgment of a justice's court in an action of trespass *quare clausum fregit.*

*Geo. Miller,* for the plaintiff.

*Gardiner & Buffit,* for the defendant.

*By the Court,* McCoun, P. J. This case was brought up for the purpose of testing the validity of a by-law of the town of Southampton, made at their annual town meeting on the 7th of April, 1846, authorizing cattle and sheep to run at large upon the highways and common lands of the town. The objection taken is, that the law, so far as respects the running at large of cattle and sheep in the highways, is a nullity; and that if the legislature have granted to the electors of the town the power to make such a law, it is the grant of an *unconstitutional* power.

The court listened to the arguments of counsel on the point, supposing at the time that it was fairly presented in the record brought up. But on looking into the record we find there is not a sufficient foundation laid for the question to arise. The plaintiff declared in trespass on land other than a highway, setting out boundaries. The defendant put in a plea of the general issue, with notice of justification under the by-law of the town above mentioned. On the trial the plaintiff proved by one witness, (the only witness examined in the cause,) that the defendant's sheep, thirty or forty in number, had repeatedly trespassed on the plaintiff's meadow—that they came and remained until driven off by the plaintiff or his servants—that they entered through a water fence from adjoining land belonging to the heirs of Ephraim White, and not from the highway —though the animals could go from the highway on to the adjoining lands of Ephraim White which were unfenced. Now these being acts of trespass, not in running in or over the highway, and consuming the grass or herbage growing there; but in getting upon the plaintiff's meadow and doing damage, how can the trespass be justified or excused by the town law offered to be proved, however valid that law might be? The defendant made no offer or attempt to prove that his sheep wandered from the highway into the unenclosed land adjoining the plaintiff, and thence involuntarily escaped into the plaintiff's meadow through an insufficient or defective fence. Nothing of that sort was offered, to excuse the trespass or to show that the by-law was at all applicable. How then could the mere existence of the by-law affect the case? Even if it was a sufficient authority for the defendant to allow his sheep to run at large on the highways, it was no authority for him to allow them to break through his neighbor's fence and depasture his meadow; and in an action for the latter kind of injury and for that alone, the giving of the town ordinance in evidence, unaccompanied by other proof, was of no consequence. If the sheep were running at large under that law, either on the highways or common lands of the town, and the plaintiff's fence was insufficient or had not been made to conform to a rule or regulation of the

---
White *v.* Scott.
---

town, prescribing what should be deemed a sufficient fence, (if any such rule or regulation has been made,) under the authority of 1 *R. S.* 347, 2d ed. § 44; and through the insufficiency of fence, the sheep had entered and done the damage—then the defendant should have proved the fact of such insufficiency of fence; for in no case is it to be presumed. (*Id.* § 45. 1 *Cowen's Tr.* 377.) And that fact being established, in connection with the town ordinance referred to, the question, whether valid or not, would then have been fairly presented. The objection, however, was taken to the introduction of the town law, not because of its irrelevancy, or that the defendant had not yet laid the foundation for its introduction, but on the ground of its being unconstitutional and void; and on this ground it appears the justice ruled it out, and the plaintiff had a verdict. The court of common pleas differed from the justice in that respect, and reversed his judgment; for it could not have been reversed on the ground that the plaintiff had not made out a case of trespass in the first instance. Neither the common pleas, nor the justice, appears to have considered how the question arose, or whether it was properly before them to be decided; and so this court might proceed to pass upon the question; but after all, the decision could not be regarded as settling the point, because the case as presented does not necessarily call for its consideration. It is an important question, involving the meaning and extent of a statutory power conferred upon town meetings throughout the state, to make rules and regulations " for determining the *times* and *manner* in which cattle, horses or sheep shall be permitted to go *at large* on the highways." (1 *R. S.* 2d ed. 333.) Whether it authorizes the making of a town law for the indiscriminate use of the highways for grazing or pasturage as well as for travel, and if it does—then whether it is a constitutional grant of a power? These are questions of frequent occurrence among the agricultural population of the state, and this is not the first time they have arisen in the courts of inferior jurisdiction; (1 *Cowen's Tr.* 386;) though this is the first time within our knowledge, that they have been attempted to be brought before the supreme court for adjudica-

White *v.* Scott.

tion. However desirable it may be to have these questions determined here, the case as now presented does not call for a determination of them. Opinions upon points not necessary to be decided in order to dispose of the case in hand, have not the force and effect of binding authority for other cases. We cannot therefore undertake to decide the question at present, though we think there can be very little doubt of the constitutionality of the power as conferred by and expressed in the statute, but that the power is not to be understood as authorizing the making of a town law, by which horses, cattle and sheep shall be permitted promiscuously to run at large and depasture the highways of the town. On the contrary, the going at large as authorized by the statute, must be under rules and regulations as to *time* and *manner ;* and we think that these words in the statute are restrictive, and are to be construed with a due regard to the rights of property and individual ownership of the soil of highways. That the power of a town meeting cannot lawfully be exercised, beyond allowing the owners of the soil to turn their own animals out to feed on such parts of the highway as they respectively own, under such safeguards (rules and regulations) as shall prevent any obstruction of the public use or travel, and as shall at the same time avoid collisions and trespasses by the beasts of one owner upon the property of another. The by-law of the town of Southampton greatly transcends the power as thus understood to be conferred, and if it were now properly before us, we think we should have no difficulty in pronouncing it to be a void law—void, as extending beyond the authority which the electors of the town in their collective capacity, possess under the statute. But irrespective of this question, the cause as tried before the justice admitted of no other result than a verdict and judgment for the plaintiff; and the common pleas decided erroneously, therefore, in reversing it.

Judgment of the common pleas reversed.