## COURT OF APPEALS.

THE PEOPLE *ex rel.*, WILLIAM C. WETMORE, and others, respondents, agt. THE BOARD OF SUPERVISORS OF THE COUNTY OF NEW YORK, appellants.

Questions of the *constitutionality* of a law are never considered in this court, unless necessary to the determination of the appeal.

The act of 1855 appointing *commissioners of records* for the city and county of New York, provided, that "the necessary expenses incurred by them shall be paid by the county treasurer, upon the certificate of said commissioners; and the supervisors of said city and county, are hereby authorized to raise, by tax, the amount required to defray the same."

The act of 1860, containing the annual tax bill, provided, that "the said board of supervisors are hereby empowered to cause to be raised and collected in manner aforesaid, the further sum, not exceeding $80,000, to meet and pay whatever sum up to that amount, as may be found due to the contractors with the commissioners of records of the city and county of New York. The comptroller is authorized to pay said amount when the same shall be *judicially determined.*"

*Held*, that the board of supervisors, under these acts, was neither charged with the duty, nor clothed with the power of making payment of the moneys thus authorized to be raised. The latter act left it with the courts to determine whether the claimants were entitled to this money; and the comptroller was not authorized to pay it over, until the right of the contractors should be judicially ascertained.

This judicial determination which was to precede the application of the fund by the comptroller, was not a condition precedent to the authority of the board to raise it. The board of supervisors were, therefore, required imperatively to raise this fund, irrespective of the judicial determination, and on their refusal a *mandamus* would lie to compel them to do so.

*Argued September Term*, 1865; *decided October*, 1865.

A PEREMPTORY MANDAMUS was allowed on the relation of the commissioners of records of the city and county of New York, requiring the board of supervisors to raise by tax, the sum of $72,034.26 for the purposes designated in the act of 1860. (*Laws of* 1860, *p.* 1,024.)

The facts on which the mandamus was granted, were substantially these:

On the 13th of April, 1855, the legislature passed "an act for the appointment of commissioners of records for the city and county of New York," which provides as follows:

"§ 1. William C. Wetmore, Jonathan Nathan, Richard

Busteed and George P. Nelson are hereby appointed commissioners of records for the city and county of New York, with full power to examine into the condition of the records, documents, maps and indices in the offices of the clerk, register and surrogate of said city and county, and to have the same copied and printed in such form and to such an extent as they may deem proper, and to do such further acts for the preservation and convenient examination of the same as the public interest may require.

"Said clerk, register and surrogate shall be *ex officio* commissioners in reference to their respective offices.

"§ 2. The said commissioners shall receive no compensation for their services.

" The necessary expenses incurred by them shall be paid by the county treasurer upon the certificate of said commissioners, and the supervisors of said city and county are hereby authorized to raise by tax, the amount required to defray the same." (*Laws of* 1855, *p.* 763.)

On the 17th of April, 1860, the legislature passed the annual tax bill for the county of New York, the sixth section of which provides as follows :

"§ 6. And the said board of supervisors are hereby empowered to cause to be raised and collected in manner aforesaid, the further sum not exceeding eighty thousand dollars, to meet and pay whatever sum, up to that amount, as may be found due to the contractors with the commissioners of records of the city and county of New York.

" The Comptroller is authorized to pay said amount when the same shall be judicially determined." (*Laws of* 1860, *p.* 1024.)

It appears that on the 15th of November, 1855, the commissioners of records entered into a contract with McSpedon & Baker to prepare index books, on a new and more perfect plan, of all instruments recorded in the books of the register's office, and to print and bind one thousand sets thereof, at prices fixed in the contract; that the contractors proceeded

with the execution of the work ; that prior to 1860 they had received under the contract, upon the certificate of the commissioners, from moneys raised by tax by the board of supervisors under legislative authority, the sum of $192,877.80 ; that all moneys raised for the purpose of defraying the necessary expenses incurred . by the commissioners had been exhausted ; that no funds remained in the hands of the county treasurer applicable to that purpose, and that there was due to McSpedon & Baker, under their contract, the further sum of $58,957.12, which was duly certified by the commissioners in conformity with the act.

It appeared in like manner that there were due to other parties for services performed by the directions of the commissioners. under the authority of said act, various sums certified by them and specified in the moving papers, augmenting the amount required to be raised for the purposes originated in the act of 1860, to the aggregate sum of $72,034.26.

On the 22d of May, 1860, the commissioners certified in duplicate to the board of supervisors the amounts so incurred, and made the usual requisitions for the raising thereof, by tax.

It was alleged in the moving papers, that down to the 26th of July, 1860, the board of supervisors neglected and refused to raise such amounts or any portion thereof; that they did not intend to raise the same or to take the necessary steps therefor; and that they were preparing to issue their warrant for the collection of the taxes of the city and county, without including any levy or appropriation for the purposes above referred to.

On the 9th of August following, an affidavit was made in behalf of the board of supervisors, by the president, in opposition to the application, alleging that the committee to whom the question had been referred had reported against including these amounts in the tax levy; that on the 17th of July the report was recommitted, in order that there might

be a new report; that the committee still had the matter under advisement; that the said board had not refused to comply with the requisitions, and that the president did not know the intention of that body, and had no means of information until final action should be had.

The affidavit also alleged that McSpedon and Baker had attempted, the previous year, to compel the board by mandamus to raise money for a like purpose, and that such attempt had thus far failed, though the proceedings were still pending on appeal from an order refusing to quash the return of the board; that such appeal involved the question whether the act of 1855 was constitutional, and that it would be pressed to argument at the next September general term.

The affidavit further alleged that the act of 1855, appointing commissioners of records, was unconstitutional and void. It further alleged that, at the time the expenditures in question were said to have been incurred by the commissioners, there was no appropriation in the county treasury to pay the same, or any part thereof. It also alleged that the board had no means of ascertaining that the expenses in question were incurred or that the same were necessary, other than the certificates of the commissioners of record. It appeared by the affidavit that a meeting of the board had been held on the 7th of August, 1860, and that the board had then adjourned to the 28th of August.

On the hearing at special term, before Judge SUTHERLAND, on the 12th of September, 1860, a peremptory mandamus was granted, and the order was subsequently affirmed on appeal to the general term.

From that decision the board of supervisors took the present appeal.

　　ABRAHAM R. LAWRENCE, JR., *for appellants.*
　　JOHN W. EDMONDS, *for respondents.*

*By the court*, PORTER, J.　It is quite evident, from the inac-

tion and delay of the board of supervisors, as well as from the grounds on which the application for a mandamus was resisted, that the board did not recognize its obligation to raise the moneys in question under the act of 1860. There was, it is true, no formal refusal; but we think the court below was right in holding that, under the circumstances disclosed in the affidavits, the neglect of the board was equivalent to a refusal to comply with the requisition. (*The Queen* agt. *The Vestrymen of St. Margaret*, 8 *Adolph. & Ellis*, 889, 904; *The People* agt. *Supervisors of Richmond*, 20 *N. Y.* 253.)

The question whether the act of 1855 was constitutional is not necessarily involved, and such questions are never considered in this court unless they are essential to the determination of the appeal. (*Frees* agt. *Ford*, 2 *Seld.* 176.) The authority which the supervisors were called upon to exercise was conferred by a subsequent law, the validity of which is entirely clear. (*Laws of* 1860, *p.* 1024, § 6; *Thomas* agt. *Leland*, 24 *Wend.* 65; *Town of Guilford* agt. *Supervisors of Chenango*, 3 *Kern.* 143; *Brewster* agt. *City of Syracuse*, 19 *N. Y.* 116. The board was empowered by the act of 1860 to raise and collect by tax a fund not exceeding $80,000 and sufficient to pay such amount as might be found due to the contractors with the commissioners of records.

It was neither charged with the duty nor clothed with the power of making payment. The act left it with the courts to determine whether the claimants were entitled to the moneys so raised; and the comptroller was not authorized to pay it over until the right of the contractors should be judicially ascertained.

The record discloses the fact that, at the time of the passage of the act of 1860, a litigation was pending between the contractors and the appellants, in which an issue was made as to the validity of the law appointing the commissioners; and the design of the legislature evidently was to direct the raising of a fund sufficient to meet the demands of the claimants for services rendered by them for the public benefit, and

on the pledge of the public faith, and the performance of which was certified by the proper officers, in conformity with the provisions of the act of 1855. It is equally plain that the legislature did not intend to direct the payment of the fund from the treasury until the rights of the parties beneficially interested should be fixed by legal adjudication.

It is insisted that the judicial determination which, by the terms of the act, was to precede the application of the fund by the comptroller, was a condition precedent to the authority of the board to raise it. Such a construction would be subversive of the plain purpose of the provision. If the precise amount to be paid was to be fixed by judgment before the action of the supervisors, there would have been no propriety in the limitation of the levy to $80,000. The law required them to raise, within this limit, so much as should be sufficient to meet the amount found due to the contractors, and this was readily ascertainable by the certificates of the commissioners, which the statutes had made presumptive evidence of the facts. (*Laws of* 1855, *p.* 763, § 3.) In respect, however, to payments by the comptroller from the fund in question to the contractors, the legislature superadded the further condition that the amounts should be judicially ascertained. The design of the law maker is quite apparent, and though the language in which the intent is expressed is loose and inartificial, we are bound to give full and fair effect to the substance of the provision.

The order of the general term should be affirmed.

All the judges concurring.

Order affirmed.