THE PEOPLE OF THE STATE OF NEW YORK ex rel. RAYLAND REALTY CO., INC., Appellant, v. WILLIAM R. FAGAN, Clerk of the Municipal Court of the City of New York, Borough of Brooklyn, Sixth District, Respondent.

Second Department, December 7, 1920.

Landlord and tenant — summary proceedings — proceeding pending after final order — constitutional law — police power — Laws of 1920, chapter 942, prohibiting for two years issuance of warrant in summary proceeding.

Although a final order was made in a summary proceeding prior to the enactment of chapter 942 of the Laws of 1920, adding subdivision 1a to section 2231 of the Code of Civil Procedure, the proceeding is still pending within the meaning of said statute which provides in effect that in a pending proceeding for the recovery of real property, on the ground that the occupant holds over after the expiration of his term, a warrant shall not be issued for two years.

Said statute is a valid exercise of the police power.

BLACKMAR, J., dissents in part, with opinion.

APPEAL by the relator, Rayland Realty Co., Inc., from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 19th day of October, 1920, denying its motion for a peremptory writ of mandamus directed to the

defendant, as clerk of the Municipal Court of the City of New York, commanding him to issue to the relator a warrant to execute a final order in summary proceedings granted the relator by the Municipal Court to evict from the relator's premises a tenant who held over after the expiration of his term.

*Grover M. Moscowitz* [*Sidney F. Strongin* with him on the brief], for the appellant.

*William B. Carswell* [*John P. O'Brien, Corporation Counsel,* with him on the brief], for the respondent.

Briefs also submitted by *George L. Ingraham, William D. Guthrie, Francis M. Scott, I. Maurice Wormser* and *Richard G. Babbage, amici curiæ.*

Jenks, P. J.:

The relator acquired premises subject to a lease to Reines which expired on April 30, 1920. It instituted a summary proceeding in the Municipal Court against Reines as a hold-over. The proceeding was heard on May 7, 1920, and a final order was made for possession but staying the warrant to August 1, 1920. That order was amended on August 2d by stipulation extending the stay until October 1, 1920, on condition of no further stay. On October 4, 1920, the relator applied to this defendant as clerk of the Municipal Court for a warrant in execution of the final order. But as chapter 942 of the Laws of 1920 (adding to Code Civ. Proc. § 2231, subd. 1a) had been passed on September 27, 1920, the clerk refused the warrant. The relator moved at Special Term for mandamus, and this appeal is from an order which denied that motion.

This appeal presents but two questions: (A) Was the summary proceeding pending at the time of the enactment of chapter 942 of the Laws of 1920? (B) And if so could the Legislature enact that statute which provides the stay — the basis of the clerk's refusal to issue the warrant?

(A) The said statute provides: " In a pending proceeding for the recovery of real property in such a city on the ground that the occupant holds over after the expiration of his term, a warrant shall not be issued," etc. Thus the statute expressly

declares the legislative purpose is to stay the warrant in a pending proceeding. A warrant can have no legal existence until after the final order. If the final order *ex propriore vigore* ended the proceeding, the proceeding could not be pending when the warrant, the very subject-matter of the provision, came into existence. Further, the statute of summary proceeding declares that the issuing of the warrant for the removal of a tenant from demised premises " cancels the agreement for the use of the premises, if any, under which the person removed held them; and annuls accordingly the relation of landlord and tenant." (Code Civ. Proc. § 2253.) It follows that until the warrant issue the relation of landlord and tenant exists, and so the proceeding is not terminated by the final order. I think that maugre the final order this proceeding should be regarded as " pending " within the purview of this statute. (*Wegman* v. *Childs*, 41 N. Y. 159; *Pitt* v. *Davison*, 37 id. 235, 241; *Mulstein Co.* v. *City of New York*, 213 id. 308, 314.)

(B) The statute only postpones this statutory remedy in that it stays the issue of the warrant for two years. In no other way is the remedy touched. This is within the ordinary powers, so to speak, of the Legislature. (*Stocking* v. *Hunt*, 3 Den. 274; *Wolfkiel* v. *Mason*, 16 Abb. Pr.. 221 [Gen. Term Com. Pls.]. See, too, *Van Rensselaer* v. *Snyder*, 13 N. Y. 299; *Conkey* v. *Hart*, 14 id. 22; *Morse* v. *Goold*, 11 id. 281; *Butler* v. *Palmer*, 1 Hill, 324.)

But the contention is that under the circumstance of this pending proceeding this provision is unconstitutional. The courts do not consider the constitutionality of a statute unless the question is so involved in the given case as to be essential to the determination of that case. (*People ex rel. Wetmore* v. *Supervisors of New York*, 3 Abb. Ct. App. Dec. 566; *Frees* v. *Ford*, 6 N. Y. 176; *Dodge* v. *Cornelius*, 168 id. 244; *Demarest* v. *Mayor*, 147 id. 203, 207; *White* v. *Scott*, 4 Barb. 56; *People ex rel. Yale* v. *Eckler*, 19 Hun, 609, 613; *People ex rel. Simpson* v. *Wells*, 99 App. Div. 364, 366; *People ex rel. Usoy* v. *Waring*, 52 id. 36, 40; *Clark* v. *Kansas City*, 176 U. S. 118.) Then, and then only, the court decides whether there is conflict between laws of different authority, and the statute, being of lesser authority in so far as it conflicts with Constitution, is declared extinct.

**188** PEOPLE EX REL. RAYLAND REALTY CO., INC., *v.* FAGAN.

Second Department, December, 1920. [Vol. 194.

(1 Bryce Am. Commonwealth, 253; Haines Am. Doctrine of Jud. Supremacy, 184; Cooley Const. Lim. [7th ed.] 227 *et seq.*)

The final order in the supplementary proceeding does determine every question litigated or that may on the issues raised be litigated, relating to the existence and validity of the lease and the relation of the parties (*Reich* v. *Cochran*, 151 N. Y. 127), but it does not, as we have seen, terminate the relation of landlord and tenant; that is done by the warrant which is a subsequent step in the procedure itself. (Code Civ. Proc. § 2253.)

It is not necessary to decide what, if any, were the contract rights of this owner perforce of the contract of leasing or of its performance, or of his institution of the summary proceeding which went to final order. At most the final order was but a judgment. But a judgment is not a contract (*McCoun* v. *N. Y. C. & H. R. R. R. Co.*, 50 N. Y. 176; *O'Brien* v. *Young*, 95 id. 428; *Morley* v. *Lake Shore Railway Co.*, 146 U. S. 162), and it is not within the purview of the constitutional provision as to the obligation of contracts. (Black Judg. §§ 9, 10, 11.) Whatever the contract rights of the relator or of its tenant, they must give way to the public welfare. And a statute enacted in the exercise of the police power — the " law of overruling necessity," as it once was termed — is paramount and cannot be affected by previous contracts between individuals. (*Manigault* v. *Springs*, 199 U. S. 473, 481; *Buffalo East Side R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *Lincoln Trust Co.* v. *Williams Building Corp.*, 229 id. 313.)

The contention against this statute assumes that the owner is deprived of all remedies. So far as this isolated statute is concerned, this is error. This statutory remedy is not abolished, it is but postponed and for a definite period. No attempt is made by this statute to affect any other remedy. But we are pointed to other and contemporaneous statutes known as the September laws, and it is said that these statutes and this statute, articulated, deprive the owner of all remedies for two years. As I have said, we cannot consider other statutes not necessary to the decision in this case with purpose to pass upon their constitutionality. But I concede that we could consider the September statutes, as any other statute,

to determine whether all remedies were abolished, if in the case at bar we were thus confronted with that condition. But we are not confronted with that condition because, whatever other statutes may provide, the remedy affected only by this statute is not abolished, but is modified or postponed only, so far as the means of enforcement are concerned. It is not essential that the remedy extant should be as drastic or efficacious. (*Sturges* v. *Crowninshield,* 4 Wheat. 200, and see the comments of the chief justice as to the principle in *Bronson* v. *Kinzie,* 1 How. [U. S.] 316.)

If, however, *contrary to the fact,* by exercise of the police power, all existing remedies were stayed by the Legislature by several statutes for a definite period determined by the Legislature, or if in the exercise of the police power all remedies were thus stayed in one statute for a definite period determined by the Legislature, even then the legislation would not necessarily transcend this sovereign power. The validity of the statute would depend upon its justification by emergency and the reasonableness of the stay under the circumstance.

Thus Cooley on Constitutional Limitations (7th ed. p. 414) says: "And a statute which authorizes stay of execution, *for an unreasonable or for indefinite period,* on judgments rendered on pre-existing contracts, is void, as postponing payment, and taking away all remedy during the continuance of the stay." (The italics mine.)

*Breitenbach* v. *Bush* (44 Penn. St. 313) held a stay of all process for three years constitutional, in that the emergency justified it. It was for definite time and it was not unreasonable under the circumstance. (See, too, *Coxe's Executor* v. *Martin,* 44 Penn. St. 324.) In *Bunn, R. & Co.* v. *Gorgas* (41 Penn. St. 441) a stay was pronounced unconstitutional because the Legislature had not exercised its own discretion as to the duration of the stay. The line of discrimination is pointed out by WOODWARD, J., in *Bunn's Case* (*supra*). The learned judge also pointed out that this feature — definite duration by the legislative act — saved the constitutionality of the stay for a year, upheld by the court, per GIBSON, Ch. J., in *Chadwick* v. *Moore* (8 W. & S. 50). Both in *Breitenbach's Case* (*supra*) and *Chadwick's Case* (*supra*) the opinions deal with

**190** PEOPLE EX REL. RAYLAND REALTY CO., INC., *v.* FAGAN.

Second Department, December, 1920.      [Vol. 194.

principles. GIBSON, Ch. J., in the latter case considers the principle in the light of the decisions of the Supreme Court of the United States and concludes with the statement that summary suspensions of execution for a reasonable time have not been infrequent in some sister States, as creditors have submitted to them as regulations depending, in the language of Mr. Justice BALDWIN, " on the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment." This language, as the context shows, is in *Jackson* v. *Lamphire* (3 Pet. 290). (See, too, *Edmonson* v. *Ferguson*, 11 Mo. 344; *Bender* v. *Crawford*, 33 Tex. 745.) Black on Constitutional Prohibition (§ 159) says: " There is reasonable ground for holding that when some public necessity exists, as in case of war or invasion, an act suspending legal proceedings for a limited period is not unconstitutional; for a statute of this character, prompted by such an emergency, rather conduces to the due administration of justice and is beneficial to parties litigant."

It is contended that the statute is unconstitutional because it takes private property without compensation. To say that it does " take it " is, of course, to beg the question. In *Transportation Co.* v. *Chicago* (99 U. S. 642) the court, after declaration that private property shall not be taken for public use without just compensation being made, say: " But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action. This is supported by an immense weight of authority. Those who are curious to see the decisions will find them collected in Cooley on Constitutional Limitations, p. 542 and notes."

This statute does not touch the title of the owner. It does not physically take the premises. It does not directly work encroachment upon them. It does interfere to a degree for two years with the owner's absolute control. That is, if the present use of the premises is to be continued by the owner, the statute controls such use by continuance of the

present user; the owner cannot change the person of the user simply from preference of another, even though that other may be the more *persona grata* to the owner or is ready to pay a greater sum for the use. Thus far but no farther the " consequences may impair its use," but this, as we have seen, as declared by the Supreme Court, is not the taking contemplated by the Constitution.

It is contended that there is no principle that justifies the " taking of the property of A to give it to B for his private use," and that this is done by this law. But although the " immediate purpose " were the private use of B, the contention may not be sound if there is " ulterior public advantage." Thus in *Noble State Bank* v. *Haskell* (219 U. S. 104), HOLMES, J., for the court, in speaking of the exercise of the police power, says: " In the first place it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. (*Clark* v. *Nash*, 198 U. S. 361.) " (See, too, *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige, 72.) The comparative significance of this " taking " in the case at bar is considered later:

The due process clause is not to be invoked as against exercise of the police power. ( *Union Dry Goods Co.* v. *Georgia P. S. Corporation*, 248 U. S. 372.)

The sweep of this sovereign power is broad and deep. In the *Slaughter House Cases* (16 Wall. 62) MILLER, J., says: " This power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property. ' It extends,' says another eminent judge, ' to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State; * * * and persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State. Of the perfect right of the Legislature to do this no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.' "

The extent of the taking is measured by the emergency. Cooley on Constitutional Limitations (7th ed. p. 878) says: "And there are other cases where it becomes necessary for the public authorities to interfere with the control by individuals of their property, and even to destroy it, where the owners themselves have fully observed all their duties to their fellows and to the State, but where, nevertheless, some controlling public necessity demands the interference or destruction. A strong instance of this description is where it becomes necessary to take, use, or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity."

The judiciary is not supreme. But with respect to the sovereign power of the Legislature there may arise in a given case a judicial question necessary to the decision of the rights of the litigants then before the court. " For many times the things deduced to judgment may be *meum* and *tuum* when the reason and consequence thereof may trench to point of estate." (Bacon, Viscount St. Albans.) But the power of the courts to sit in judgment upon the Legislature must be exercised with the utmost caution. (*People* v. *Griswold,* 213 N. Y. 92.) In that case MILLER, J., for the court says: " Legislation passed in the exercise of the police power must be reasonable in the sense that it must be based on reason as distinct from being wholly arbitrary or capricious, but when the Legislature has power to legislate on a subject, the courts may only look into its enactment far enough to see whether it is in any view adapted to the end intended. If it is, the court must give it effect, however unwise they may regard it, or however much they might, if given the choice, prefer some other measure as more fit and appropriate." Our function is to recall the Legislature to the confines of the highest law which limits all branches of government. In the words of HOLMES, J., we should be slow to use the " *nolumus mutare* as against the law-making power." (*Noble State Bank* v. *Haskell, supra,* 110.) Bacon has said of the judges: " Let them be lions but yet lions under the throne, being circumspect that they do not check or oppose any points of sovereignty."

We are now asked to declare as extinct an act of sovereign

power — an act passed in the avowed exercise of the police power, which is said by my brother PUTNAM in *People ex rel. Doscher* v. *Sisson* (180 App. Div. 468; affd., 222 N. Y. 387) to be the least limitable of the powers of government. And we are asked to do so upon inspection of the act, in that it stays for two years a statutory remedy.

The motives of the Legislature are not our concern. (*People* v. *Shepard*, 36 N. Y. 285.) If a state of facts could exist which justified a change in the remedy, " we must presume it did exist, and that the law was passed on that account." (*Antoni* v. *Greenhow*, 107 U. S. 775.)

The Legislature has declared· that this act is passed in " emergency," which is an apt term for " A sudden or unexpected occasion for action; exigency; pressing necessity." (Cent. Dict.) As we have seen, this very word " emergency " is used by Mr. Justice BALDWIN of the Supreme Court of the United States in *Jackson* v. *Lamphire* (*supra*) with reference to stay laws. What is the emergency apparently in the view of the Legislature? We can read in the legislative report of its joint committee (*Caminetti* v. *United States*, 242 U. S. 470, 490) that the bill will do away with the anxiety of the many people in New York who are now holding their premises under short stays, or have been served with notices to move on October 1st. The report of the joint legislative committee on housing of September 20, 1920, tells us (pp. 5, 6) that over 60,000 tenants had been notified to vacate irrespective of the rental, and says: " The attempts of some landlords to obtain more rent by taking tenants to court month after month and the granting of short stays from time to time subject families to great anxiety. They know not when they may have to move, have no place to go, lose respect for laws and the courts, who to them seem unable to respect their rights. They readily fall victims to the agitator." To recur to the language of MILLER, J., in the *Slaughter House Cases* (*supra*), this police power extends to secure " social order, the life and health of the citizen, the comfort of an existence in a thickly populated community. * * * 'Persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity

Second Department, December, 1920.        [Vol. 194.

of the State.'"   Can it be said that the Legislature, primarily the judge of reasonableness (*Antoni* v. *Greenhow, supra*), was unreasonable in that it has exercised this sovereign power so that we must conclude that the police power is but a cloak or a guise?

The Legislature is not dealing with an invasion of tramps. It is not yielding to a new variation of the cry of " bread and the circus." It would assure the present homes to citizens who pay for their habitation. Confronted with the stress of circumstance, could not the Legislature have asked what city, even our City of New York, however law abiding, can maintain its peace, health and order against the consequences of the evictions of perhaps thousands of its law-abiding citizens so that they may become outcasts with no places to lay their heads? . What consequences, in this densest city ever known, may not follow when the health and life of these citizens and their families face the peril of homelessness? All landlords are not profiteers and many are humanitarians. There may be, there must be, isolated cases of hardship in all applications of the rule of the greatest good of the greatest number. The house of the owner may be destroyed to prevent the spread of fire. But what is the chief peril of conflagration but the destruction of shelter, whereupon civil government may totter, pestilence may come and anarchy stalk in? Concede that this statute does not " add one square foot " to the housing accommodations of the people in the city of New York; yet there remains the question of the preservation of civil order and health and life. If we can, I think we may suppose that the Legislature believed that this statute of stay for such a period might make for the order and health and life of this community. Upon this view might it not be " comparatively insignificant " that as a necessary incident to meet the " emergency "— to keep tranquility — the owner who purposed to continue the use of his land for tenants, should not change the tenant without reason save caprice or avidity for higher rentals. " New occasions make new duties." In this emergency I cannot see that the statute *flouts* the Constitution or is Collectivism beyond the spirit and the law of our land.

My decision, if not my discussion, is confined to the question

necessarily presented for the determination of this case. I advise affirmance of the order, without costs.

PUTNAM, J., concurs; MILLS and KELLY, JJ., concur, with separate opinions; BLACKMAR, J., dissents, with opinion, and votes for reversal.

MILLS, J. (concurring):

I concur in the result of affirmance, but solely on the following grounds:

The new rent statutes are of three classes, viz.: (a) Those limiting the application of the remedy of summary proceedings; (b) those limiting the remedy of ejectment; and (c) those limiting the right to recover an agreed rental. The instant case deals only with the first class of provisions. As to those, I think that as the remedy of summary proceedings is purely statutory it was competent for the Legislature to take it away in whole or in part. The questioned statutes serve in that respect only to take the remedy away in a very substantial part. Therefore I conclude that these provisions are constitutional and valid regardless of the motives which actuated the Legislature in their passage. As to each of the other two classes of provisions there are very grave questions as to their constitutionality and validity which it would be our duty to consider most carefully if they were by this record presented for our determination; but I conclude that they are not so presented. Obviously they are not, unless the three classes of provisions are so inter-related as to constitute one entire scheme to the extent that one cannot be carried into effect without the others also being accomplished. Doubtless they constitute one entire scheme, but I think that the three measures thus adopted by the Legislature to effectuate its purpose are separate and distinct, so that we may fairly treat those three sets of provisions as independent, the one from the other, and so declare the one here involved valid without regard to the validity of the others. We have, in this country, great historic authority for the proposition that even the highest court in considering a question of the very greatest popular concern should confine itself to the single point directly presented by the record before it. For these reasons I vote to affirm.

KELLY, J. (concurring):

The Special Term refused the mandamus and the relator appeals, insisting, (a) that the proceeding was not pending at the date of the passage of the act, chapter 942 of the Laws of 1920 (adding to Code Civ. Proc. § 2231, subd. 1a), and (b) that the act in question is unconstitutional and deprives relator of its property without due process of law. The Legislature called in extraordinary session by the Governor has declared that an emergency exists affecting the life and health of the community at large, and has prohibited the issuance of warrants in pending summary proceedings until November, 1922. If the action of the Legislature is not wholly arbitrary or capricious and is based on reason, the courts may only look into its enactment far enough to see whether it is in any view adapted to the end intended. " If it is, the court must give it effect, however unwise they may regard it, or however much they might, if given the choice, prefer some other measure as more fit and appropriate." (*People* v. *Griswold*, 213 N. Y. 92.) In my opinion the act in question cannot be said to be wholly arbitrary or capricious nor can a court say that the Legislature had no reason for taking action of some sort to relieve existing conditions. The co-ordinate branches of the government have declared that the emergency exists and the courts cannot substitute their judgment as to the existence of the fact, if they entertain different notions on the subject. The method adopted by the Legislature to relieve the situation is by exercise of the police power. I do not agree that the object or result of the act in question is to deprive the relator of its property, or that it is deprived of its property for the benefit of the tenant. The declared object of the act is to benefit the entire community; that it may incidentally prevent the ousting of this particular tenant from his apartment for a time is doubtless true, but the benefit intended is not to this tenant but to the community of which he is a part. The criticism that the act does not add a single dwelling or apartment overlooks the broader purpose declared in the legislation to protect the public from the danger incident to wholesale evictions. I agree with the presiding justice that the summary proceeding in the case at bar was pending within the meaning of chapter 942 of the Laws of 1920, and for the reasons stated by him. In my opinion the mani-

fest intention of the Legislature was to prohibit the issuance of warrants in every proceeding in which they had not been issued at the date of the passage of the act.

The summary proceeding to remove tenants was a creation of the Legislature, and despite its long continuance on the statute books, altered and amended from time to time, I am of opinion that the Legislature might repeal it altogether, and so had power to regulate the procedure by staying the execution of warrants.

But it is said that if the act, chapter 942 of the Laws of 1920, is a valid exercise of legislative power, the relator corporation is without remedy to recover possession of its property for two years, because it is barred from the common-law action in ejectment by another statute passed on the same day. (See Laws of 1920, chap. 947, adding to Code Civ. Proc. § 1531a.)

In passing upon the constitutionality of the laws enacted by the Legislature, I am of opinion that the court must confine itself to the statute immediately presented for review. We are dealing with one act, chapter 942 of the Laws of 1920. The relator is not before the court asserting its rights in an ejectment action; the right of the relator corporation to maintain an action in ejectment has not been questioned on the record before us and that question may never be presented. Especially where the constitutionality of the action of the coordinate branch of government is involved, the courts should not go outside the record to pass upon the constitutionality of other statutes which may or may not affect the rights of the litigants, but which are not directly involved in the case at bar. (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531; *Jeffrey Mfg. Co.* v. *Blagg*, 235 id. 571.)

For these reasons I vote to affirm the order of the Special Term.

BLACKMAR, J. (dissenting):

Agreeing, as I do, that this case falls within the scope of chapter 942 of the Laws of 1920,* prohibiting in effect the issuance of a warrant, until November 1, 1922, in pending

---

* Adding to Code Civ. Proc. § 2231, subd. 1a.— [REP.

198 People ex rel. Rayland Realty Co., Inc., *v.* Fagan.

Second Department, December, 1920.            [Vol. 194.

proceedings to dispossess tenants holding over after the expiration of their terms, there remains for determination only this question, viz.: Has the relator been deprived thereby of its property without due process of law? This question, for convenience of discussion, may be divided into two parts: *First*, has the relator been deprived of its property? and, *second*, if so, has it been by due process of law? A law passed in the exercise of the police power is due process of law, and the second question, therefore, resolves itself to the consideration of the police power as a justification for depriving the relator of its property.

Proceeding, therefore, in order, I will first consider whether the relator has been deprived of its property. The relator is the owner of real property in the city of New York. On the 7th of May, 1920, by a final order made by a court of competent jurisdiction, it was adjudged to be entitled to immediate possession. In such proceeding no further judicial act was to be performed. It was a final adjudication between the relator, as landlord, and its tenant, which established their respective rights and duties with reference to the possession of the premises. Thereafter was enacted chapter 942 of the Laws of 1920, which prohibited the issuance, until November 1, 1922, of the warrant to execute such final order. The actual, practical result is that the tenant is given the right to occupy the relator's property for upwards of two years. For two years, or for such shorter time as the tenant may choose to occupy it, the relator is deprived of its property.

This is not like the cases cited by the presiding justice, in which there were stays of execution on judgments for money. In such cases the conditions of the parties were unchanged by the stay, and interest compensated for delay. This law does much more. It operates on future conditions and practically carves out of the landlord's property an estate for years which it bestows on the tenant.

But it is said that the only effect of the law in question is to deprive the relator of a remedy given by statute. As an abstract proposition, I do not question the power of the Legislature to alter or abolish the remedy afforded by statutory summary proceedings. But we are not discussing abstract propositions, and should confine ourselves to the case before

us. The relator had, before the September laws were passed, obtained a final order adjudging to it the possession of its property. To enforce this right, its sole remedy was the warrant, the issuance of which follows of course as a ministerial act. This remedy the statute took away. Undoubtedly, if there were other means of regaining possession, open in the law, it would not be deprived of its property, for it could secure the property by resort to such other means. But the final order conclusively adjudicated the question. (*Reich* v. *Cochran*, 151 N. Y. 122.) In the face of such adjudication, no other action for the same relief can be maintained. If the relator should bring an action of ejectment, which concededly is the only other possible remedy, the final order could be pleaded as a bar. Two judgments cannot be obtained on the same cause of action. The right is merged in the first judgment and cannot again be the basis of another action. It follows that as to the relator, which has obtained the final order, the statute deprives it for two years of all remedy for obtaining possession of its property. (Black Judg. chap. 19, § 674; *Caylus* v. *New York, Kingston & Syracuse R. R. Co.*, 76 N. Y. 609.)

This argument does not need the support of chapter 947 of the Laws of 1920,* which took away the remedy by ejectment also. As to that, it is sufficient to say that chapters 942 and 947 were passed at the same extraordinary session of the Legislature, where by virtue of the Constitution (Art. 4, § 4), the Legislature was limited by the message of the Governor to passing upon the subject of the housing situation. The laws so passed deprived, by their express terms, until November 1, 1922, all landlords within the territory specified, which includes the city of New York, of the aid of the courts in obtaining possession of their property from hold-over tenants. I cannot perceive how we are justified in assuming the unconstitutionality of chapter 947, in order to sustain chapter 942. But as my associates claim that chapter 947 is not in any way before us, I rest my argument on the proposition first stated, that the cause of action to oust the tenant was merged in the final order, and cannot be the basis of any other relief, and,

---

* Adding to Code Civ. Proc. § 1531a.— [REP.

**200** People ex rel. Rayland Realty Co., Inc., v. Fagan.

Second Department, December, 1920. [Vol. 194.

therefore, the law which deprived the relator of the power and right of enforcing the final order for two years deprived it of its property for that length of time.

Assuming, then, that the relator has been deprived of its property, we reach the question whether it was by due process of law, or, what is the same thing, in the proper exercise of the police power. The power to legislate in the interest of the public health, safety, morals and general welfare is essential to every government, and is called the police power. The constitutional guaranties of life, liberty and property were not meant to nullify this power nor to limit its just operation. Neither can the police power be exercised so as essentially to impair these guaranties. The police power and the Constitution are like adjoining fields of law. There is a boundary between them, which cannot be defined in advance, for it shifts with the necessities of the situation, but as each question arises it is the duty of the court to determine in which field it lies. The constitutional provision* against depriving any person of his property without due process of law applies as well to legislative as to judicial acts; in fact, it limits the power of every department of the government, whether executive, legislative or judicial. As was said by Judge Andrews in *Bertholf* v. *O'Reilly* (74 N. Y. 509, 519): " In judicial proceedings, due process of law requires notice, hearing and judgment; in legislative proceedings, conformity to the settled maxims of free governments, observance of constitutional restraints and requirements, and an omission to exercise powers appertaining to the judicial or executive departments." It is the duty of the courts, who are sworn to support the Constitution to decide, with reference to the special facts before them, whether the constitutional safeguards have been impaired by legislation under the guise of the police power, and there is no question which has occasioned so many well-considered judgments of courts of last resort or so much discussion among jurists.

Any law which limits the rights of an owner to use his own property, *pro tanto* deprives him of the property. Never-

---

* See U. S. Const. 14th Amendment, § 1; State Const. art. 1, § 6.— [Rep.

theless there is no doubt that the Legislature may, in the exercise of the police power, regulate and limit the use of land to the injury of the owner. This is exemplified in our building laws, our health laws, our factory laws, our tenement house laws, and in our so-called zoning law. (*Health Department* v. *Rector, etc.*, 145 N. Y. 32; *Hadacheck* v. *Los Angeles*, 239 U. S. 394; *Welch* v. *Swasey*, 214 id. 91; *St. Louis Poster Adv. Co.* v. *St. Louis*, 249 id. 269; *Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313.) It is manifest that in all of these cases the owners have been deprived of some use of their real property by the exercise of the police power of the State. The application of this power varies with changing social and economic conditions. But it is always a question for the courts whether, in the exercise of such police power, the Legislature has infringed constitutional property rights. The province and duty of the courts cannot, it seems to me, be better expressed than in the words of Mr. Justice PECKHAM in *Welch* v. *Swasey* (214 U. S. 105): " The statutes have been passed under the exercise of so-called police power, and they must have some fair tendency to accomplish, or aid in the accomplishment of some purpose, for which the Legislature may use the power. If the statutes are not of that kind, then their passage cannot be justified under that power. These principles have been so frequently decided as not to require the citation of many authorities. If the means employed, pursuant to the statute, have no real, substantial relation to a public object which government can accomplish; if the statutes are arbitrary and unreasonable and beyond the necessities of the case; the courts will declare their invalidity." It is by this rule that the question whether the constitutional rights of the relator to its property have been impaired by the operation of the law above cited, must be decided.

We are bound by the judgment of the Legislature to recognize that in the district affected by these laws a condition exists which calls for legislation to correct it. The construction of new dwelling house accommodations has been interrupted by the war. The population has steadily increased and is being continually reinforced by immigrants. The relation of the supply of housing accommodations to the demand has been interrupted, to the serious injury of the public. One

202   People ex rel. Rayland Realty Co., Inc., *v.* Fagan.

Second Department, December, 1920.          [Vol. 194.

subject for relief is this shortage of dwellings, and there can be no doubt that the Legislature may enact apt laws to correct this situation. In fact, some of the twelve laws passed at the extraordinary session seem to have direct relation to this subject and are calculated to re-establish the proper relation between the supply and demand of housing accommodations. Such, for instance, are chapters 946 and 949,* which authorize the investment of certain public funds in bonds of the Land Bank of the State of New York, and which empower the city authorities to exempt from taxation, for a limited time and for local purposes, all buildings of a certain character to be constructed for dwelling purposes within a time specified.

But it is not perceived how the operation of chapter 942, under which the relator claims that it has been deprived of its property, will add one square foot to the supply of dwelling accommodations, or will decrease in any respect whatever the demand therefor. If the purpose and object of the Legislature is solely to relieve the housing situation, this act, applying the test quoted from Mr. Justice Peckham, has no real, substantial relation to this public object. Six of the laws passed at the extraordinary session, including chapter 942, affect the rentals of property only, and an increase or decrease of rentals has no necessary and proper relation to the question of the sufficiency of the housing accommodations. It is not permissible to say that a landlord will dispossess his hold-over tenants for the purpose of holding the property vacant. His purpose is to increase the rent to the incoming tenant. While the price of building material, the cost of labor, the amount of taxes and the expense of maintenance are increasing, the tendency of these laws is to prevent that increase from finding its expression in the increase of the rental value of property. I, therefore, conclude that this law has no reasonable tendency to correct the condition of housing shortage.

But the problem is not yet solved. It cannot be said that the sole purpose of the laws was to increase the housing accommodations. One manifest purpose was to regulate the amount of rentals. I am not prepared to say that the regulation of rentals in a city like New York, where it is a condition

---

* Adding to Banking Law, § 149, and to Tax Law, § 4b.— [Rep.

of life that several million people shall have access to the limited amount of land included within the city limits, is beyond the police power of the State. I am not aware of any case that has gone so far, and that question may well be decided when it arises. But such regulation must be uniform and proceed upon principles of justice to all. The police power over the property of individuals is usually exercised by regulation and not by confiscation. I am aware of the danger of general statements, and for that reason I use the word " usually." The exercise of the police power sometimes does result in confiscation; but the confiscation, so far as I am aware, always takes the form of the destruction of the property. Instances of this are the destruction of gambling instruments; of infected property, even animals; and the power, which is recognized to exist, of stopping a conflagration by the destruction of private property. But I am not aware that property has ever been " confiscated " for public use without just compensation, nor for private use under any circumstance whatever. In fact, to take one man's property and vest it in another is not to act in " conformity to the settled maxims of free governments."

We have seen that the operation of chapter 942 of the Laws of 1920 was to deprive the relator of the right of possession of its property for a period of upwards of two years for the use of the tenant. As the essential element of the ownership of real property is the right of possession, the relator is deprived of its property. There is no pretense that its land was taken for a public use nor that just compensation was made in the manner required by the Constitution.* For two years its land is taken and the use of it given to another. I had supposed that it was established beyond question that under our Constitution the property of one man could not be taken by legislative act and vested in another. (*Powers* v. *Bergen,* 6 N. Y. 358; *Brevoort* v. *Grace,* 53 id. 245; *Gilman* v. *Tucker,* 128 id. 190; *Traction Company* v. *Mining Company,* 196 U. S. 239; *Matter of Lansing,* 182 N. Y. 238.) The claim of the respondent is, it seems to me, resolved to this: that if this be done in a sufficiently large number of cases, it will result

---

* See Const. art. 1, §§ 6, 7.— [REP.

**204** People ex rel. Rayland Realty Co., Inc., *v.* Fagan.

Second Department, December, 1920. [Vol. 194.

in advancing the public weal. A like argument could be used with equal force in favor of an equal division of property or an expropriation of property in land for the purpose of establishing communism. I take it that it is not competent for the Legislature, even in the interest of public welfare, to take private property and devote it to a private use. Here at least is a boundary to the police power. The radical difference between statutes regulating and limiting the use of private property, even to the injury of the owner, in the interest of the general welfare, and those whose effect is to transfer the use of property from one private individual to another, is obvious. As is said in *Noble State Bank* v. *Haskell* (219 U. S. 110), cited by the presiding justice, the incidental effect of a law in the interest of public welfare may be to permit a " comparatively insignificant taking of private property for what, in its immediate purpose, is a private use." But is this a " comparatively insignificant taking? " The relator landlord cannot obtain possession of its property for two years although judicially declared entitled to it. Meanwhile, under drastic penalties (Laws of 1920, chap. 951),* the landlord must properly maintain the premises, pay taxes, and eviction for non-payment of rent cannot be had if the rent is increased without the consent of the tenant. (Laws of 1920, chap. 945.)† Nor can the landlord recover rent reserved except subject to a new and strange defense of duress, and subject to a presumption that the rent is unreasonable if increased during the preceding year (Laws of 1920, chap. 944),‡ and, finally, the landlord is deprived of power to fix the rent except subject to the revision of some court. It seems to me that it would be a misuse of language to call this a " comparatively insignificant taking of private property." It is in my view a substantial taking of private property for private use. This is not due process of law and consequently is not a valid exercise of the police power.

During the war we became used to an immense extension

---

*Amdg. Penal Law, § 2040, as added by Laws of 1920, chap. 131.— [Rep.

†Amdg. Code Civ. Proc. § 2231, subd. 2a, as added by Laws of 1920, chap. 139.—[Rep.

‡Amdg. Laws of 1920, chap. 136.— [Rep.

of the police power, under the name of war powers.   This has also in a measure been continued during a period of peace. That public opinion which pervades the minds of all, including legislatures and judges, and upon which the maintenance of constitutional guaranties depends, has become so used to an abnormal exercise of the police power that the stability of the constitutional immunities is shaken.   There is a danger that the continually recurring attacks on the rights of personal liberty and individual property, under laws passed in the exercise of the police power, may gradually undermine the stability of a constitutional form of government based upon the individual rights of a free people.   A police power which has no constitutional limitations has no place in a free government.   A literal application of much that has been written on the subject of the police power would leave the individual without protection from the arbitrary and tyrannous acts of a temporary majority.

I vote to reverse and to grant the motion for a mandamus.

Order affirmed, without costs.